PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant, *v.* NATIONAL BANK OF COMMERCE IN NEW YORK, Respondent.

First Department, April 5, 1917.

Bills and notes — action by depositor against bank to recover amount of checks upon which names of payees had been forged — duty of depositor to look for forged indorsements — liability of bank.

Where in an action by an insurance company to recover the amount of two checks drawn by it upon its account with the defendant bank, it appears that the checks were sent by the plaintiff to its manager and agent for transmission to the payees in payment of claims against the plaintiff, and that said agent forged the names of the payees, deposited the checks in his account with his bank through which they were collected in due course from the defendant, which charged the amount thereof to the plaintiff's account, it is error for the court to refuse to charge that there was no duty on the part of the plaintiff to look for forged indorsements of the payees of the checks.

It was also error to refuse to charge that the plaintiff had the right to assume, upon the return of the checks, that the defendant had ascertained that the indorsements were genuine, and that the plaintiff is not

presumed to know the signatures of the payees, and to instruct the jury that the bank was chargeable with reasonable diligence to see that the signature was not a forgery.

The plaintiff was under no duty to compare the indorsements on the checks with the genuine signatures of the payees on file in its office.

APPEAL by the plaintiff, Prudential Insurance Company of America, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 24th day of June, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 19th day of June, 1916, denying plaintiff's motion for a new trial made upon the minutes.

*R. Dulany Whiting*, for the appellant.

*Frank Parker Ufford*, for the respondent.

DAVIS, J.:

The action was brought to recover the amount of two checks drawn by the plaintiff upon its account with the defendant — one dated March 18, 1912, in favor of Rena C. Phipps, for the sum of $1,983.26, and the other dated March 25, 1912, in favor of Ella M. Wade, for the sum of $1,633.70. Both checks were sent by the plaintiff to Arthur G. Eaton, its manager and agent in Portland, Me., for transmission to the payees in payment of claims against the plaintiff. Eaton forged the names of the payees and deposited the checks in his account in the Fidelity Trust Company of Portland, Me., through which they were collected in due course from the defendant, which charged the amount thereof to the plaintiff's account.

The material allegations of the complaint, including those of the forgeries of the names of the payees, were admitted, the formal denials contained in the answer being withdrawn at the trial and the defendant taking the affirmative.

Briefly stated the defense is that the plaintiff, by the exercise of ordinary care and diligence, could have ascertained that the indorsements on the Wade and Phipps checks were forgeries, and could have notified the defendant bank in time to enable it to stop payment on the checks. It is claimed that at the time of the forgeries in question the plaintiff knew, or ought to have known, that Eaton had committed other for-

geries while in its employ between April 1, 1908, and March 18, 1912, and it specified a forgery of an annuity policy in September, 1911, a forgery on February 27, 1912, of the payee's name on a check for $425 to the order of John Henry Cuzner and Eva May Cuzner. Because of this knowledge, actual or imputed, defendant contends that the plaintiff knew that its manager, Eaton, was not a proper person to intrust with the Wade and Phipps checks. It is quite true that Eaton did commit the numerous forgeries charged against him; that he did embezzle the premium funds and also forged an annuity policy. But there is no evidence that the plaintiff knew of these delinquencies prior to March 28, 1912, the date on which the latter of the two checks referred to in the complaint was paid by the defendant. The defendant relied mainly upon its ability to show that the plaintiff ought to have known of these crimes of its manager, Eaton, and could have known of them had it exercised ordinary care in checking up its vouchers.

All of the forged checks were issued by the plaintiff in the usual course of its business for death claims, except the Cuzner check which was issued for the cash surrender value of a policy. The forgery in each instance was of the payee's name. There was no forgery as to the amount, nor as to the name of the drawer. Those facts are important as bearing on the question of what care the plaintiff was bound to exercise as between itself and the bank to discover the forgery. The plaintiff had an elaborate system for checking up its vouchers as they came from the bank. It had a list of all the checks drawn by it. This was compared with the bank book and check book and the returned vouchers. The face of the vouchers was examined and the indorsements were examined to see if they corresponded with the name of the payee. There was no effort made to ascertain if the signature of the payee was genuine. The defendant claims that it was plaintiff's duty to make such examination by comparing the indorsement with the genuine signature of the payee then on file in its office and attached to the proofs of death. There is no authority for this contention. It would put a burden upon the depositor altogether too heavy to be carried by any large business concern issuing, as it often does, hundreds of checks each day.

The court refused the plaintiff's request to charge that there was no duty on the part of the plaintiff to look for forged indorsements of the payees of the checks.   This was error.   It was held in *Metallurgical Securities Company* v. *M. & M. National Bank* (171 App. Div. 321), relying upon *Critten* v. *Chemical National Bank* (171 N. Y. 219), that there is no duty imposed on the depositor to look for forged indorsements.

The court also refused to charge that " the plaintiff, the Prudential Insurance Company of America, had the right to assume upon the return of the two checks, the subject of this action, that the defendant, the National Bank of Commerce in New York, had ascertained that the indorsements upon the said checks were genuine; and that the plaintiff is not presumed to know the signatures of the payees."   In refusing the request the court said: " Why, of course, the bank is not chargeable with knowledge of the correct signature of the payee, but the bank is chargeable with reasonable diligence to see that the signature is not a forgery.   Otherwise I refuse to charge."

The plaintiff was entitled to have the jury instructed as requested, and it was error to limit the duty of the defendant to the exercise of reasonable diligence.   (*Shipman* v. *Bank S. N. Y.*, 126 N. Y. 318.)

As the errors pointed out require the reversal of this judgment, it is unnecessary to refer to others apparent upon the record.

The judgment and order are reversed, and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, DOWLING and SMITH, JJ., concurred.

Judgment and order reversed, new trial ordered, costs to appellant to abide event.