(96 South. 324)

## CITIZENS' BANK OF WINFIELD v. COMMERCIAL SAV. BANK OF GUIN.
### (6 Div. 882.)

(Supreme Court of Alabama. April 19, 1923.)

1. **Banks and banking** ⬅147(1)—Generally money paid on altered instrument recoverable, but if either party is negligent loss falls on him.

Since a bank or drawee is not bound to know the handwriting in the body of an instrument, money paid by a bank or a drawee upon a raised check or draft generally may be recovered as paid without consideration, but, if either party has been guilty of negligence by which the other has been injured, the negligent party must bear the loss.

2. **Banks and banking** ⬅147(1) — Drawee bank paying altered draft may not recover if holder subjected to loss or if drawee's negligence amounted to bad faith.

The negligence of a drawee bank in paying a raised or altered check or draft does not prevent the recovery of the money paid to a holder unless the holder has been thereby subjected to a loss which he would not otherwise have suffered, or unless the negligence of the drawee amounts to bad faith, so that payment was not in fact made by mistake.

3. **Banks and banking** ⬅149—Drawee bank paying raised draft to collecting bank held entitled to recover from collecting bank's principal.

Where defendant bank paid a raised draft drawn on plaintiff bank, which paid it to defendant's correspondent, plaintiff *held* entitled to recover from defendant as a matter of law, if plaintiff paid the draft to defendant's correspondent without knowledge of its fraudulent alteration—that is, in good faith, under a mistake of fact.

4. **Banks and banking** ⬅226—Single count in assumpsit held sufficient in action by drawee bank to recover amount paid on raised draft under mistake of fact.

In action by drawee bank to recover amount paid on raised draft to defendant's collecting bank under a mistake of fact, a single count in general assumpsit would have been a suffi-

---

cient complaint; and for a defense, besides the general issue, nothing more was necessary than a plea setting up plaintiff's negligence, with an allegation of facts showing defendant was prejudiced.

**5. Appeal and error** &#8718;**1033(5)—Instruction as to negligence of drawee bank paying raised draft and seeking to recover from collecting bank favorable to defendant.**

In an action by drawee bank to recover amount paid to defendant's collecting bank on a raised draft, under an alleged mistake of fact, an instruction on the issue of plaintiff's negligence was favorable to defendant, where the instruction did not require that in order to negative plaintiff's alleged mistake of fact, plaintiff's negligence should have been so gross as to amount to bad faith, or should have proximately injured defendant, and involved it in loss otherwise preventable.

**6. Appeal and error** &#8718;**1064(1)—Instruction as to drawee bank's neglect in paying altered draft held not prejudicial to defendant collecting bank.**

In an action by drawee bank to recover amount paid to defendant bank's correspondent on an altered draft, without notice of the alteration as alleged, the giving of plaintiff's instruction that, if the jury were reasonably satisfied that plaintiff had no notice that draft had been altered, or it had nothing to put it on notice, they should find for plaintiff, *held* not prejudicial to defendant.

**7. Banks and banking** &#8718;**216 — Action by drawee bank to recover amount paid on altered draft not based on draft, but to recover money paid.**

An action by a drawee bank to recover from defendant bank amount paid to defendant's correspondent on a nonnegotiable altered draft, alleged to be paid under mistake of fact, is not an action on the draft nor on defendant's indorsement thereon, but an action to recover money paid under mistake of fact, the draft merely being evidence of the relation of the parties, which is the real foundation of the resulting rights and obligations involved; Code 1907, §§ 5153–5155, not applying.

**8. Banks and banking** &#8718;**149—Collecting bank paying altered draft not entitled to immunity from liability where its facilities for discovery were same as drawee bank's.**

Where defendant collecting bank's facilities for discovering the alteration of a draft were exactly the same as those of plaintiff drawee bank, defendant could not claim immunity from its mistake in paying the draft.

Appeal from Circuit Court, Marion County; J. J. Curtis, Judge.

Action by the Commercial Savings Bank of Guin against the Citizens' Bank of Winfield. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Affirmed.

The action is on common counts for money due to plaintiff from the defendant, and also on several special counts, which allege the facts out of which defendant's obligation to plaintiff grows. The following essential facts are shown by the evidence without dispute:

The plaintiff, the Commercial Savings Bank of Guin (to be referred to as the Commercial Bank), had on deposit funds belonging to the Western Tie & Timber Company, and on October 28, 1920, the latter drew a nonnegotiable sight draft on the Commercial Bank in favor of one J. H. Hollis, as payee, for the sum of $4.90. Within a day or two a person representing himself as J. H. Hollis presented the draft to the defendant, the Citizens' Bank of Winfield (to be referred to as the Citizens' Bank), with the request that it be cashed. The check was written in pencil, and when presented to defendant Bank its amount had been raised, by erasure and substitution, from $4.90 to $583.40. Upon its delivery to the Citizens' Bank, indorsed by the bearer as J. H. Hollis, the bank paid to him $583.40, and transmitted it, with its own indorsement, to the First National Bank of Birmingham, its regular correspondent, for collection, pursuant to which the latter bank indorsed it and forwarded it to the plaintiff bank for payment. Plaintiff bank duly paid the draft—$583.40—and charged the amount against the drawer's account. In about ten days plaintiff bank was informed by the drawer that the draft had been drawn for $4.90, and fraudulently altered after delivery to $583.40. The drawer then sued the drawee bank, plaintiff herein, and recovered and collected a judgment for the difference between the amount of the draft as drawn and as paid, and thereafter the drawee bank brought this suit against the Citizens' Bank.

There is nothing in the evidence tending to show that plaintiff bank had any knowledge or notice, at or before the time it paid the draft, that it had been altered after delivery, other than that fact might have been discovered or suspected from the appearance of the draft itself.

W. A. Frost, a bank cashier of experience, testified for defendant that "it looks like any cashier might discover some irregularity in his check." He stated that, in his opinion, it had been altered, giving as a reason the visible fact of the different handwriting in the written body of the check.

The cashier of plaintiff bank, who handled the draft and paid it, testified that he had no knowledge, nor any notice from any source, that the draft had been altered before he remitted the amount of it in payment to the collecting bank.

The trial judge instructed the jury at plaintiff's request:

"If you are reasonably satisfied from the evidence that the plaintiff had no notice that the check or draft in question had been changed or altered before, or at the time, it paid same, and had nothing to put it on notice that it had been changed or altered, you should find for the plaintiff."

In his oral charge to the jury the trial judge said:

"So the question I am leaving to you is whether or not the Commercial Savings Bank, under the facts in this case, knew that this was a raised check, or had knowledge of such circumstances or facts that would lead a prudent person to investigate and find that it was a raised check."

The jury found for plaintiff, and there was judgment for $661.53, from which defendant appeals.

E. B. & K. V. Fite, of Hamilton, for appellant.

To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith. Acts 1909, p. 135. If an indorser who cashes a check pays the same to the payee, and after indorsement of the same by the named payee, the liability of the indorser ceases. First Nat. Bank v. People's Bank, 18 Ala. App. 190, 91 South. 324.

W. F. Finch, of Jasper, for appellee.

Where a bank, in good faith and without negligence, pays, even to an innocent holder, a check drawn upon it, which has been fraudulently and materially altered, it may recover from such holder the amount paid, under the general rule that money paid under a mistake of fact may be recovered. Redington v. Woods, 45 Cal. 406, 13 Am. Rep. 190; Continental Nat. Bank v. Metropolitan Nat. Bank, 107 Ill. App. 455; Third Nat. Bank v. Allen, 59 Mo. 310; Nat. Park Bank v. Eldred Bank, 90 Hun, 285, 35 N. Y. Supp. 752; Nat. City Bank v. Westcott, 26 Wkly. Dig. (N. Y.) 161; Oppenheim v. West Side Bank, 22 Misc. Rep. 722, 50 N. Y. Supp. 148; Brady on Bank Checks, 158; City Bank v. First Nat. Bank, 45 Tex. 203; White v. Continental Nat. Bank, 64 N. Y. 316, 21 Am. Rep. 612; Espy v. First Nat. Bank, 85 U. S. (18 Wall.) 604, 21 L. Ed. 947; Birmingham Nat. Bank v. Bradley, 103 Ala. 109, 15 South. 440, 49 Am. St. Rep. 17; First Nat. Bank v. People's Bank, 18 Ala. App. 190, 91 South. 324.

SOMERVILLE, J. [1] The general rule is well settled that—

"A bank which pays money by mistake on a raised or altered check or draft may recover it back from the person, provided the bank has not been guilty of culpable negligence in making the payment." 7 Corp. Jur. 691, § 419.

A more precise statement of the law is made by Judge Freeman as follows:

"The bank or drawee is not bound to know the handwriting in the body of the instrument. Where, therefore, money is by mistake paid by a bank upon a raised or altered check, or by a drawee upon a raised or altered draft, neither party being in fault, it may generally be recovered back, as paid without consideration; but if either party has been guilty of negligence or carelessness, by which the other has been injured, the negligent party must bear the loss." People's Bank v. Franklin Bank, 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884, note, p. 896, citing many authorities.

In the leading case of Marine Nat. Bank v. Nat. City Bank, 59 N. Y. 77, 17 Am. Rep. 312, it was said:

"Moneys paid upon checks and drafts which have been forgeries, either in the body of the instrument or in the indorsements, or in any respect except the name of the drawer, have uniformly been held recoverable as for money paid by mistake, and expressly upon the ground that payment, as an admission of the genuineness of the instrument, was the same as an acceptance, and only operated as an admission of the signature of the drawer."

The doctrine is clearly stated in Metropolitan Nat. Bank v. Merchants' Nat. Bank, 182 Ill. 367, 55 N. E. 360, 74 Am. St. Rep. 180, citing 2 Dan. Neg. Insts. § 1661, which says:

"This doctrine is clear and is sustained by authority. The bank is not bound to know anything more than the drawer's signature, and in the absence of any circumstances which inflict injury upon another party, there is no reason why the bank should not be reimbursed."

[2] With respect to the negligence of the drawee bank, it is clear, as the authorities hold, that it is wholly immaterial, and does not prevent a recovery back of the money paid to a holder of the altered check or draft unless the holder has been thereby subjected to a loss which he would not otherwise have suffered, or unless the negligence is so gross as to amount to bad faith, so that the payment was not in fact made by mistake.

In the instant case the defendant bank paid the amount of the altered check to the payee, and its status was then fixed and its loss complete, so far as the drawee bank was concerned. Payment of the draft by the drawee, involving nothing more than a recognition of the genuineness of the drawer's signature, certainly did not alter the position of the defendant bank for the worse, and, whether negligent or not, there is no suggestion in the evidence, or otherwise, that the drawee's refusal to pay it would have in any way benefited the defend-

ant. Nat. Bk. of Commerce v. Nat. Mech. Banking Ass'n, 55 N. Y. 211, 14 Am. Rep. 232; Crocker Woolworth Bk.' v. Nevada Bank, 139 Cal. 564, 73 Pac. 456, 63 L. R. A. 245, 96 Am. St. Rep. 169, 177. See, also, First Nat. Bank v. People's Bk., 18 Ala. App. 190, 91 South. 324.

In Alabama Nat. Bank v. Rivers, 116 Ala. 1, 17, 22 South. 580, 67 Am. St. Rep. 95, an Atlanta bank drew its draft for $2 on the National Park Bank of New York, in favor of one Hall. Subsequently the name of the payee was fraudulently changed to Gellhorn, and the amount fraudulently changed to $2,-000, which amount was paid by the Alabama National Bank to Gellhorn on the indorsement of the draft by Rivers, and the draft was forwarded for collection through the National City Bank of New York. Payment was refused by the drawee, and the suit was against Rivers on his indorsement. But the court observed:

"As between the drawee, the National Park Bank, and the National City Bank, holding the draft for collection as the plaintiff's agent, if the former in fact paid the draft to the latter, the payment, assuming the draft to have been raised as alleged, would be treated in law as made under a mistake of fact, and if the latter had not in fact paid the money over to the plaintiff, but had merely credited its account with the amount, it could have been compelled to refund the money to the drawee, and, having refunded it, could have charged back to plaintiff the amount credited."

The same doctrine was stated by way of dictum, arguendo, in B'ham Nat. Bank v. Bradley, 103 Ala. 119, 15 South. 440, 49 Am. St. Rep. 17.

It will be noted that, in the case of payment by the drawee bank to a collecting bank, as an agent and not as owner, the collecting bank is not liable to the drawee bank if the former has paid the amount to its principal, and has not the power to recall or cancel the payment. We are not concerned with that principle here, since the defendant bank was the holder and owner of the altered check, and received payment of its proceeds in its own right.

[3] In the case before us the plaintiff bank was entitled to recover, as a matter of law, if it paid the draft to the defendant bank's collecting agent without knowledge of its fraudulent alteration—that is, in good faith, under a mistake of fact.

[4] A single count in general assumpsit would have been an all-sufficient complaint.

As for the defense, besides the general issue, nothing was needed other than a plea setting up plaintiff's negligence, if there was any, with an allegation of facts showing that defendant was thereby prejudiced.

[5] These issues · were correctly pointed out by the trial judge, and correctly submitted to the jury as decisive of the case. But the issue of the plaintiff bank's negligence was stated far too favorably for the defendant, in that it was not required that, in order to negative its alleged mistake of fact, plaintiff's negligence should have been so gross as to amount to bad faith, or, if not amounting to bad faith, it should have proximately injured defendant and involved it in otherwise preventable loss.

[6] Without going into further details, it will suffice to say that the trial judge did not err to the prejudice of defendant in the giving or in the refusal of requested instructions.

[7] In view of what we have said, it is not necessary to discuss the rulings of the trial court on the special counts of the complaint, and the various special pleas. This is not a suit on the draft, nor on defendant's indorsement thereof, as much of defendant's pleading and argument assumes, but is a suit merely to recover money paid under a mistake of fact. The draft is evidence merely of the relation of the parties, which is the real foundation of the resulting rights and obligations here involved. We are not concerned with questions of liability as between indorsers, and sections 5153–5155 of the Code, as to the time for bringing suit by an assignee of a nonnegotiable chose in action, are without application. Nor does the question of the proper identification of the payee need to be considered; and in our view of the case we have assumed that the defendant bank was without fault in that respect.

[8] On the issue of negligence in dealing with this altered draft, it is difficult to see how the defendant bank can claim immunity from a fault which it would fasten on the plaintiff, their facilities for discovering the fraud from the face of the paper being exactly the same.

As the case is presented by the record, we think the judgment should be affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.